<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RAYMOND J. ZRODSKEY, | : | Civil No. 11-0283 (JAP) |
| Plaintiff, | : | |
| v. | : | <u>OPINION</u> |
| HEAD CLASSIFICATION OFFICER, et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

    RAYMOND J. ZRODSKEY, #157235C, Plaintiff <u>Pro</u> <u>Se</u>
    Southern State Prison
    4295 Route 47
    Delmont, NJ 08314

    SCOTT D. RODGERS, Esq.
    Miller, Robertson & Rodgers, P.C.
    P.O. Box 1034
    Somerville, NJ  08876
    Attorneys for Defendants Apisa, Repetz-Quinn, Wright, Varga, El

    STEPHEN E. SIEGRIST, Esq.
    O'CONNOR KIMBALL, LLP
    51 Haddonfield Road, Suite 330
    Cherry Hill, NJ  08002
    Attorneys for Defendant Baler

**PISANO, District Judge**:

    Before this Court are three motions for summary judgment: one filed by Plaintiff, one filed by defendant Carleton Baler, and one filed by the remaining defendants.  For the reasons set forth

below and pursuant to Fed. R. Civ. P. 78, this Court will grant Dr. Baler's motion for summary judgment and deny the other motions.

## I.  BACKGROUND

Plaintiff's Complaint asserts violation of his constitutional rights under 42 U.S.C. § 1983 arising from his confinement as a pretrial detainee at Somerset County Jail.  The defendants are Sgt. Varga, Classification Officer; Sgt. Apisa; Corrections Officers El and Wright; Nurse Repetz-Quinn; and Dr. Carleton Baler.  Plaintiff asserts that at 7 p.m. on October 23, 2010, while he was incarcerated at the jail, inmate Jackson and an unknown inmate "jumped" Plaintiff.  He alleges that, two hours later, Plaintiff punched the unknown inmate in the face while they were in the day room.  He states that he and Jackson were sent to lock-up for fighting.  Plaintiff asserts that Jackson later pled guilty at a disciplinary hearing to fighting.  He alleges that, a few days later in October, Plaintiff had his administrative hearing before Sgt. Apisa.  Apisa allegedly told Plaintiff that they had a video recording of Plaintiff punching the "unknown" inmate; Plaintiff was found guilty and sentenced to 10 days in lock-up.

Plaintiff further alleges that on November 1, 2010, he was informed that he would be going back to the same unit after he was released from lock-up.  He claims that he told defendant El that he shouldn't be returned to the same unit where the inmate he punched was housed, and that El responded that he would let the Head Classification Officer, Sgt. Vargas, know about the problem.  Plaintiff asserts that, about 45 minutes later, El returned and informed Plaintiff that Plaintiff had to either return to that unit or face a charge, so Plaintiff went back to the unit.  He alleges that, on November 12, 2010, "the unknown inmate hit me from behind about three times and broke my jaw." (Dkt. 1 at 8.)

Plaintiff claims that he had surgery at Somerset Medical Center and was sent back to the jail with metal plates in his mouth. He further claims that, although the surgeon prescribed a specific pain medication and informed jail officials that Plaintiff's food had to be liquified, he did not receive the correct pain medication and his food was not liquified, so he could not eat. Plaintiff alleges that he was evaluated by the surgeon on subsequent occasions and the surgeon again prescribed the specified pain medicine and liquified food, but Plaintiff did not receive either, despite his repeated complaints to Dr. Baler, Nurse Quinn and CO Wright, who was in charge of the kitchen.

This Court screened the Complaint for dismissal, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and construed the Complaint as stating two claims under 42 U.S.C. § 1983. First, Plaintiff's allegations state a failure to protect claim under the Due Process Clause of the Fourteenth Amendment against defendants El, Vargas, and Apisa. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (to state a failure-to-protect claim, an inmate must show that he is objectively "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant knows of and fails to respond reasonably to that risk). Taking Plaintiff's allegations as true, these defendants were aware of the risk to Plaintiff's safety posed by returning Plaintiff to the unit housing the unknown inmate (who had assaulted Plaintiff once). Plaintiff further alleges that defendants El, Vargas, and Apisa did not reasonably respond to this risk, as they returned Plaintiff to the unit.

Second, Plaintiff's allegations assert a deliberate indifference to medical needs claim against Dr. Baler, Nurse Quinn, and CO Wright. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (Deliberate indifference may be found "where the prison official (1) knows of a

3

prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."). Plaintiff alleges that these defendants were aware that the surgeon had prescribed a liquid diet, but that they failed after Plaintiff's repeated complaints to provide the only diet Plaintiff was able to eat.

This Court ordered the Clerk to issue summons, the Marshal to serve the Complaint on defendants, and defendants to file an answer. Dr. Baler filed an Answer. (Dkt. 22.) In the Answer, Dr. Baler admits that he is a medical doctor who was employed by Correctional Health Services, Inc., to provide medical care to inmates at the Somerset County Jail. He denies that he was deliberately indifferent to Plaintiff's medical needs for pain medication and a liquid diet or negligent in providing care to Plaintiff. Baler filed a cross-claim against his co-defendants demanding contribution and indemnification.

The remaining defendants ("Somerset County defendants") filed one Answer in which they generally deny the allegations in Plaintiff's claims one and two, and raise ten affirmative defenses, which are not relevant to the motions before this Court. (Dkt. 28.) The Somerset County defendants filed a cross-claim against Dr. Baler for indemnification and contribution, and denied all material allegations contained in Dr. Baler's cross-claims.

Plaintiff filed a motion for summary judgment "on the issue of liability." (Dkt. 33 at 2.) Plaintiff supported the motion by an eight-page statement of facts and several exhibits. (Dkt. 33, 33-1, 33-2, 33-3.) Given Plaintiff's pro se status, this Court will construe Plaintiff's statement of facts as a certification or declaration. Plaintiff asserts facts showing that defendants Apisa, Varga and El were aware of the risk of attack Plaintiff faced from the unknown inmate, but they failed to

4

respond reasonably to the risk and simply returned Plaintiff to the unit housing the unknown inmate.  Plaintiff argues that Apisa, Varga and El violated his constitutional rights under Farmer v. Brennan, supra, by failing to protect him from a known risk to his safety.

Dr. Baler filed a motion for summary judgment against Plaintiff, supported by the certification of Dr. Baler and a memorandum of law.  (Dkt. 43.)  Dr. Baler's certification describes in detail the medical care Baler provided to Plaintiff following his jaw surgery.  Based on the certification, Dr. Baler argues that Baler was not deliberately indifferent to Plaintiff's serious medical needs and that he is entitled to judgment as a matter of law.

Finally, the Somerset County defendants filed a motion for summary judgment against Plaintiff, supported by the certification of Somerset County Jail Warden, Charles M. O'Neill, and a brief.  (Dkt. 45.)  The Somerset County defendants argue that they are entitled to summary judgment on the failure to protect claim and the deliberate indifference to serious medical needs claim.  (Dkt. 45-2.)

Plaintiff thereafter filed papers opposing defendants' summary judgment motions.  (Dkt. 61.)  Plaintiff filed a motion for leave to file an amended complaint which would add supervisory officials as defendants; the proposed amended complaint was not attached to the motion.  (Dkt. 62.)  Magistrate Judge Bongiovanni denied the motion to amend without prejudice to refiling after this Court decides the summary judgment motions, and reminded Plaintiff to attach the proposed amended complaint to any future motion to amend.  (Dkt. 68.)  Plaintiff also filed a letter brief opposing defendants' motions, in which he argues that he sent several discovery requests to defendants, including video recordings regarding the incidents, names of nurses, and records, but defendants arbitrarily denied his requests for discovery.  (Dkt. 66.)  Dr. Baler filed a

reply brief. (Dkt. 67.) Plaintiff filed a letter asking the Court to intervene and to hold the Warden in contempt for failing to produce documents in response to Plaintiff's subpoena to produce documents, information or objects, dated May 27, 2011; Plaintiff had requested all medical, classification, disciplinary, and other reports regarding Plaintiff's incarceration and care at Somerset County Jail, the names of all nurses, and the rules and regulations regarding pain medication at the jail. (Dkt. 73-1.) The Warden filed opposition, and Plaintiff filed a reply. (Dkt. 74, 75.) Magistrate Judge Bongiovanni denied the request to hold Warden O'Neill in contempt and ordered defendants to provide Plaintiff with the nurses' full names and the rules and regulations regarding distribution of pain medication at Somerset County Jail. (Dkt. 76.)

## II.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56 provides that "[a] party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought." Fed. R. Civ. P. 56(a). The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "To be material, a fact must have the potential to alter the outcome of the case" under governing law. N.A.A.C.P v. North Hudson Regional Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2011). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." In re Lemington Home for Aged, 659 F.3d 282, 290 (3d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986)). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." Ricci v. DeStefano, 557 U.S. 557, __, 129 S.Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

An affidavit or declaration "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Statements in affidavits made in the absence of personal knowledge or without factual foundation, and conclusory statements for which no basis in fact or personal knowledge is provided, are not properly considered. See Reynolds v. Department of Army, 439 Fed. App'x 150, 152 (3d Cir. 2011). Nor may a court consider hearsay statements,[1] see Gonzalez v. Secretary of Dept. of Homeland Sec., __ F.3d __, 2012 WL 898609 *6 (3d Cir. Mar. 19, 2012), or representations and argument of counsel, see D'Orazio v. Hartford Ins. Co., 2012 WL 247984 *2 (3d Cir. Jan. 27, 2012).

---

[1] Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

### III.  DISCUSSION

A.  Somerset County Defendants' Motion for Summary Judgment

The Somerset County defendants (Varga, Apisa, El, Nurse Repetz-Quinn, and Wright) supported their summary judgment motion solely with the certification of Warden Charles M. O'Neill, who is not a defendant.  (Dkt. 45-1.)  The problem with O'Neill's certification is that none of the averments in the certification are based on O'Neill's personal knowledge, and Rule 56(c)(4) requires that an affidavit or certification supporting or opposing a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  O'Neill states in his certification that "[o]n October 23, 2010, a fight between Zrodskey and Inmate Marlin Jackson was reported."  (Dkt. 45-1 at 2.)  However, O'Neill's certification provides no foundation showing that O'Neill has any personal knowledge of facts concerning the fight.  Accordingly, O'Neill cannot contest Plaintiff's averment that on October 23, 2010, Zrodskey "was jumped by two inmates around 7 p.m.  One inmate [was] Marlon Jackson & the second was inmate Calvin Johnson.  Around 9 p.m. I retaliated and punched inmate Johnson in the face on camera, in the middle of the dayroom.  Inmate James Miller stopped the fight.  Around 11 p.m. me & inmate Jackson go to lock up for fighting."  (Dkt. 33 at 3.)  O'Neill states:  "A determination was made that Zrodskey could be returned to Pod 2B if he had no problems with that assignment.  Zrodskey agreed to being housed in Pod 2B . . ." (Dkt. 45-1 at 3.)  However, again, O'Neill's certification does not provide a foundation establishing that O'Neill has personal knowledge.  And O'Neill's certification in no way disputes Plaintiff's averments that:  (1) defendant Apisa knew about Plaintiff's altercation with two

inmates in pod 2B on October 23, 2010, since Apisa asked Plaintiff at his disciplinary hearing about "punching a 'unknown inmate with dreads,'" and informed Plaintiff that "they had it on camera" (Dkt. 33 at 3); (2) defendants El and Varga knew of the risk to Plaintiff posed by returning Plaintiff to pod 2B (where the "unknown" inmate was housed), since on November 1, 2010, Plaintiff "once again" informed El, "who was also a[n] escort at the [disciplinary] hearing . . . of the problem and was told he would call and inform defendant #1 Sergeant Varga, [and] about 30 to 45 min. later I was informed to move or receive a charge. I moved." (Dkt. 33 at 3-4.)

This Court will deny the summary judgment motion filed by the Somerset County defendants because these defendants failed to support the motion by an affidavit or certification made on personal knowledge, as required by Rule 56(c)(4).

B.  Plaintiff's Motion for Summary Judgment

Plaintiff does not identify the claims and defendants against whom he seeks summary judgment, but this Court liberally construes his pro se submissions as seeking summary judgment against defendants Apisa, Varga, and El, on Plaintiff's failure to protect claim.

The Constitution requires prison officials to take "reasonable measures to guarantee the safety of the inmates," Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)), which includes protecting "prisoners from violence at the hands of other prisoners." Hamilton v. Leavy, 117 F. 3d 742, 746 (3d Cir. 1997) (citation omitted). To state a failure to protect claim under § 1983, an inmate must assert facts showing: (1) he is objectively "incarcerated under conditions posing a substantial risk of serious harm;" (2) defendant subjectively "knows of and disregards an excessive risk to inmate health or safety;" and (3) causation. See Farmer, 511 U.S. at 837.

9

Plaintiff's averments arguably indicate that (1) Plaintiff faced a substantial risk of harm by being returned to pod 2B, which also housed the "unknown" inmate who had "jumped" him on October 23, 2010, and (2) defendants Apisa, Varga, and El knew of the risk and did not reasonably respond.  However, Plaintiff does not aver facts showing that defendants' alleged failure to reasonably respond to the risk caused the injury to Plaintiff during the altercation on pod 2B in November 2010, resulting in a broken jaw. (Dkt. 33.) Plaintiff's certification in support of his motion does not describe the November altercation at all or indicate who broke his jaw. Plaintiff simply states that "[o]n November 13, 2010 I was told I needed stitches for a cut on my chin and that my jaw was broken and that I needed to have surgery." (Dkt. 33 at 4.) Because Plaintiff's certification in support of his summary judgment fails to establish causation, Plaintiff has not shown that he is entitled to judgment as a matter of law on his failure to protect claim. This Court will accordingly deny the motion.

C.  Dr. Carleton Baler's Motion for Summary Judgment

Dr. Baler supported his motion for summary judgment on Plaintiff's deliberate indifference to serious medical needs claim with his own ten-page certification. (Dkt. 43-5.) Dr. Baler avers that he personally treated Plaintiff during Plaintiff's confinement at Somerset County Jail after Dr. Chiodo performed surgery on November 14, 2010, to repair Plaintiff's broken jaw. Id. at 4-5.) Dr. Baler states that he "substituted Tylenol 3 elixir, a prescription strength liquid form of Tylenol with codeine for the Percocet" prescribed by Dr. Chiodo because "Tylenol 3 is as effective as Percocet, but has the added benefit of coming in liquid form[, whereas] Percocet only comes in a tab form." (Dkt. 43-5 at 6.) Dr. Baler avers that he ordered a pureed diet, supplemented by two cans of ensure at each meal, as prescribed by Dr. Chiodo, id. at 6-7, he

responded to Plaintiff's complaints about pain, and he responded to Plaintiff's weight loss of 11 pounds in six days. (Dkt. 43-5 at 9.) Dr. Baler avers:

> Weight loss is always expected when a person is placed on a pureed diet. It is difficult for a larger man like Zrodskey to ingest sufficient calories in pureed form to maintain his weight. As Zrodskey complained, the pureed diet is not appetizing, and jaw pain often inhibits a person's desire to eat. Although Zrodskey was not underweight at 225 pounds, an eleven pound loss seemed high in a short period of time. Thus, on that date [November 21, 2010,] I changed his diet to soft mechanical to improve his caloric intake and ordered weight checks weekly for four weeks. We continued providing the supplementary shakes at each meal as well . . . . On November 23, Zrodskey received his first weight check. His weight was 220, up four pounds from November 21. I saw Zrodskey, determined that he was asymptomatic for any issues, and continued present care.
>
> \*              \*              \*
>
> I never ignored any risk to Zrodskey from weight loss. I followed directions of Dr. Chiodo concerning the type of diet Zrodskey was able to receive. I ordered supplemental shakes for Zrodskey at each meal, and the nurses monitored how well he was eating. When Zrodskey's weight dropped eleven pounds in six days, I immediately ordered changes to Zrodskey's diet to include yogurt, oatmeal, and fruit. I also monitored Zrodskey's weight on a weekly basis, and his weight recovered quickly. As discussed above, in the best of circumstances, we expect weight loss when someone is placed on a fully pureed diet.

(Dkt. 43-5 at 8-12.)

Plaintiff's response to Dr. Baler's motion cites law, but does not dispute the facts regarding Dr. Baler's responses to Plaintiff's pain and nutritional needs. (Dkt. 61.) Plaintiff states: "the pain medication I was receiving by Doctor Ba[]ler did not work;" "the jail knew they were not properly preparing my meals & wantonly changed my diet 10 days early;" "I complained daily to nurses who refer[r]ed me to inform Head Medical Administrator Repetz-Quinn & Dr. Ba[]ler, which I did & with no effect;" "the defendants disregarded the pain that I was in & the

11

pain that they caused by not providing the correct pain meds & the right diet. I informed & complained numerous times to defendants to no avail!" (Dkt. 61 at 5-6.)

The Third Circuit has repeatedly opined:

> When a prisoner receives medical treatment and disputes the adequacy of that treatment, [federal courts] are reluctant to second guess the doctor's medical judgment. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir.2004). Mere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of 'deliberate indifference.' See Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir.1987).

Quinn v. Dietman, 413 Fed. App'x 419, 422 (3d Cir. 2011).

Plaintiff's response to Dr. Baler's motion only shows Plaintiff's disagreement with the medical treatment and, as such, does not show that Dr. Baler was deliberately indifferent to Plaintiff's pain and nutritional needs. This Court will grant Dr. Baler's motion for summary judgment on Plaintiff's claim of deliberate indifference to Plaintiff's serious medical needs claim.

## IV.  CONCLUSION

For the reasons set forth above, the Court grants summary judgment on Plaintiff's deliberate indifference to serious medical needs claim in favor of Dr. Baler, denies Plaintiff's summary judgment motion on the failure to protect claim, and denies the Somerset County defendants' motion for summary judgment. An appropriate order accompanies this Opinion.

       /s/ Joel A. Pisano  
       **JOEL A. PISANO, U.S.D.J.**

Dated: May 1, 2012