NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND J. ZRODSKEY, | : |
| Plaintiff, | : Civil Action No. 11-00283 (JAP) |
| v. | : OPINION |
| HEAD CLASSIFICATION OFFICER, et al., | : |
| Defendant. | : |

PISANO, District Judge.

Before the Court is Defendants Head Classification Officer, Sergeant Apisa, Nurse Repetz-Quinn, Medical Administrator, Officer Wright, Sergeant Varga and Officer El's (collectively, "Defendants'") Motion for Summary Judgment. The motion is unopposed. Plaintiff's failure to respond to Defendants' motion, however, does not automatically entitle Defendants to summary judgment. Rather, where the non-moving party fails to respond, the Court may enter summary judgment in favor of the moving party only if the moving party has established that summary judgment is appropriate. *See Anchorage Assoc. v. Virgin Islands Bd. of Tax Review,* 922 F.2d 168, 175 (3d Cir. 1990); Fed. R. Civ. P. 56(e) ("If the adverse party does not . . . respond, summary judgment, if appropriate, shall be entered against the adverse party."). Accordingly, the Court has reviewed Defendants' assertions with respect to Plaintiff's claims in order to determine whether Defendants are entitled to judgment on those claims as a matter of law. The Court decides these matters without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motion for summary judgment is granted.

**I.      Background**

Plaintiff's Complaint asserts violations of his constitutional rights under 42 U.S.C. § 1983 arising from his confinement as a pretrial detainee at Somerset County Jail (the "Jail").[1]  In particular, Plaintiff asserts that at 7 p.m. on October 23, 2010, while he was incarcerated at the Jail, inmate Marlin Jackson ("Inmate Jackson") and an unknown inmate "jumped" Plaintiff.  He further alleges that two hours later, Plaintiff punched the unknown inmate in the face.  He states that he and Inmate Jackson were then sent to lock-up for fighting.  Plaintiff asserts that Inmate Jackson later pled guilty at a disciplinary hearing to fighting.  A few days later, Plaintiff had his administrative hearing before Sgt. Apisa.  Sgt. Apisa allegedly told Plaintiff that they had a video recording of Plaintiff punching the "unknown" inmate; Plaintiff was found guilty and sentenced to 10 days in lock-up.

Plaintiff further alleges that on November 1, 2010, he was informed that he would be going back to the same unit after he was released from lock-up.  He claims that he told Defendant El that he shouldn't be returned to the same unit where the inmate he punched was housed, and that Officer El responded that he would let the Head Classification Officer (Sgt. Varga), know about the problem.  Plaintiff asserts that, about 45 minutes later, Officer El returned and informed Plaintiff that he had to either return to that unit or face a charge, so Plaintiff went back to the unit.  He alleges that, on November 12, 2010, "the unknown inmate hit me from behind about three times and broke my jaw." (Dkt. entry no. 1 at 8).

Plaintiff claims that he had surgery at Somerset Medical Center and was sent back to the Jail with metal plates in his mouth.  He alleges that, although the surgeon prescribed a specific

---

[1] The defendants remaining in this case are Sgt. Varga (the Head Classification Officer), Sgt. Apisa, Nurse Repetz-Quinn, Medical Administrator, Officer Wright and Officer El.  Former defendant Dr. Carleton Baler was granted summary judgment and dismissed from the case by Order dated May 1, 2012. (Dkt. entry no. 78).

pain medication and informed jail officials that Plaintiff's food had to be liquified, he did not receive the correct pain medication and his food was not liquified, so he was unable to eat. Plaintiff further asserts that he was evaluated by the surgeon on subsequent occasions and the surgeon again prescribed the specified pain medicine and liquified food, but Plaintiff did not receive either, despite his repeated complaints to Dr. Baler, Nurse Quinn and Officer Wright.

This Court screened the Complaint for dismissal, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and construed the Complaint as stating two claims under 42 U.S.C. § 1983. First, Plaintiff's allegations state a failure to protect claim against Defendants El, Vargas, and Apisa. Specifically, Plaintiff alleges that these defendants were aware of the risk to Plaintiff's safety posed by returning Plaintiff to the unit housing the unknown inmate who had previously assaulted Plaintiff and that they did not reasonably respond to this risk, since they returned Plaintiff to that unit. Second, Plaintiff's allegations assert a deliberate indifference to medical needs claim against Nurse Quinn, and Officer Wright. Plaintiff alleges that these Defendants were aware that the surgeon had prescribed a liquid diet, but that they failed to provide Plaintiff the only diet he was able to eat, even after his repeated complaints.

On June 24, 2011, the Defendants filed a motion for summary judgment against Plaintiff, supported by the certification of Somerset County Jail Warden, Charles M. O'Neill, and a brief. (Dkt. entry no. 45). Defendants argued that they were entitled to summary judgment on the failure to protect claim and the deliberate indifference to serious medical needs claim. (Dkt. entry no. 45-2). By Opinion and Order dated May 1, 2012, the Court denied the motion for summary judgment, finding that Defendants had failed to support the motion by an affidavit or certification made on personal knowledge, as required by Rule 56(c)(4). (Dkt. entry nos. 77-78).

Defendants have now moved for summary judgment a second time. They argue that they are entitled to summary judgment on the failure to protect claim and the deliberate indifference claim. This time, their motion is supported by the certifications of Head Classification Officer Varga, Sgt. Apisa, Nurse Repetz-Quinn, Officer Wright, Officer El, and Sgt. John Niedzwiecki.

## II.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56 provides that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "To be material, a fact must have the potential to alter the outcome of the case" under governing law. *N.A.A.C.P v. North Hudson Regional Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

An affidavit or declaration "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Statements

in affidavits made in the absence of personal knowledge or without factual foundation, and conclusory statements for which no basis in fact or personal knowledge is provided, are not properly considered.  *See Reynolds v. Dept. of Army*, 439 Fed. App'x 150, 152 (3d Cir. 2011). Nor may a court consider hearsay statements, *see Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 262 (3d Cir. 2012), or representations and argument of counsel, *see D'Orazio v. Hartford Ins. Co.*, 2012 WL 247984 *2 (3d Cir. 2012).

### III. Legal Discussion

#### A. The "Failure to Protect" Claim

The Constitution requires prison officials to take "reasonable measures to guarantee the safety of the inmates," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)), which includes protecting "prisoners from violence at the hands of other prisoners."  *Hamilton v. Leavy*, 117 F. 3d 742, 746 (3d Cir. 1997) (citation omitted).  To state a failure to protect claim under section 1983, an inmate must assert facts showing:  (1) he is objectively "incarcerated under conditions posing a substantial risk of serious harm;" (2) defendant subjectively "knows of and disregards an excessive risk to inmate health or safety;" and (3) causation.  *See Farmer*, 511 U.S. at 837.

Defendants El, Varga, and Apisa support the motion for summary judgment with their own certifications.  They argue that they are entitled to summary judgment on Plaintiff's failure to protect claim because they were not aware of any "substantial risk of serious harm" to Plaintiff in allowing him to return to Pod 2B, nor were they "deliberately indifferent to that risk." Specifically, they aver that when Plaintiff was first committed to the Somerset County Jail in April 2010, he specifically denied having "any enemies in this facility who may harm you," having any "co-defendants in this facility," and having "ever had an assaultive behavior to any

staff member of this facility or any facility." Thus, Plaintiff was classified as "high minimum" custody status and assigned to Pod 2B, where he remained for the next several months.

On October 23, 2010, a fight between Plaintiff and inmate Marlin Jackson ("Inmate Jackson") was reported. Both inmates were charged with fighting, disruptive conduct and being in an unauthorized area. The following day, Plaintiff signed an Inmate Disciplinary Procedure Investigative Report, in which he denied that he had been fighting and requested a hearing. In connection with the hearing, Sgt. Apisa reviewed videotape from the incident. The video did not capture the fight between Plaintiff and Inmate Jackson, but it did show Plaintiff taking a swing at an unidentifiable inmate in Pod 2B. At the hearing, Plaintiff refused to discuss the incident and did not identify the other individual involved. Following the hearing, Plaintiff was found guilty of fighting and committed to disciplinary lock-up Pod 3E for ten days.

During the time he was in lockup, Plaintiff's custody status was reclassified as "maximum custody" and he was to be reassigned to maximum custody Pod 2D upon his release from lockup on November 1, 2010. Sergeant Varga noted on a form summarizing the outcome of the disciplinary hearing that Plaintiff should be kept separate from Inmate Jackson at all times. On November 1, 2010, Officer El was assigned the task of transporting Plaintiff from lock-up in Pod 3E to Pod 2D, but Plaintiff refused to go to Pod 2D. Officer El notified Sgt. Niedzwiecki of Plaintiff's refusal, so Sgt. Niedzwiecki conducted an interview with Plaintiff. Plaintiff explained that he refused to report to Pod 2D "because of his gang affiliation" and requested to return to Pod 2B, where he had been placed initially.

Sgt. Niedzwiecki conferred with Lt. Apisa regarding this request and Lt. Apisa advised him that the request should be granted since there were potential threats in Pod 2C (Inmate Jackson) and Pod 2D (rival gang population), whereas there were no known threats in Pod 2D.

Sgt. Niedzwiecki informed Plaintiff that the request could be granted.  Plaintiff reviewed and signed an inmate notification form, which reflected the reassignment to Pod 2B and stated that he had "NO known ENEMIES or Problems in [Pod 2B]."  Officer El then transported Plaintiff back to Pod 2B.  Plaintiff did not advise any of the prison officials of any concerns relating to his being housed in Pod 2B, either at that time or at any other time prior to November 12, 2010.[2]

The Court finds, based on the undisputed facts as set forth above that "there is no genuine issue as to any material fact" with respect to Plaintiff's failure to protect claim; and therefore, "the moving party is entitled to judgment as a matter of law."  Here, each of the Defendants has stated that he was not aware of any threats to Plaintiff that existed in Pod 2B.  Furthermore, Plaintiff himself requested to return to Pod 2B; Plaintiff then signed an inmate acknowledgement form, which stated that he had no known enemies in Pod 2B; and he never apprised prison officials of any potential threats in Pod 2B.  And Defendant Varga was not personally involved in the decision to reassign Plaintiff to Pod 2B.  Accordingly, the Court will grant Defendants' motion for summary judgment on Plaintiff's claim of failure to protect.

**B. The Deliberate Indifference Claim**

Deliberate indifference may be found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  "Mere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of 'deliberate indifference.'" *See Quinn v. Dietman*, 413 Fed. App'x 419, 422 (3d Cir. 2011) (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir.1987)).

---

[2] Sgt. Varga was not at work on November 1, 2010 and was not personally involved in Plaintiff's reassignment to Pod 2B.

Here, Defendants Quinn and Wright support their motion for summary judgment with their own certifications.  Both defendants aver that the Somerset County Medical Unit responded appropriately to Plaintiff's pain and nutritional needs while he was incarcerated at the Jail and receiving medical treatment.  Officer Wright states that during his shifts in the Somerset County Jail Kitchen – which ran from 2 pm to 10 pm – he prepared Plaintiff's meals in accordance with the instructions provided to him by Dr. Baler and the Medical Unit.  He asserts that Plaintiff was never deprived of meals that were appropriate to his medical condition.  Nurse Quinn avers that she had no personal involvement with the provision of medical treatment to Plaintiff.

As the Court previously found in this case, Dr. Baler was not deliberately indifferent to Plaintiff's pain and nutritional needs during the time he received medical treatment at the Jail. *See* Opinion and Order, dated May 1, 2012 (dkt. entry nos. 77-78).  Because it is undisputed that Officer Wright followed Dr. Baler's instructions in preparing Plaintiff's meals, there is no evidence that Officer Wright was deliberately indifferent to his needs.  Moreover, Nurse Quinn was not personally involved in the provision of medical treatment to Plaintiff or the decision-making process regarding such treatment.  Accordingly, the Court finds that "there is no genuine issue as to any material fact" with respect to Plaintiff's deliberate indifference claim; and therefore, will grant Defendants' motion for summary judgment on such claim.

## IV.   Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted. An appropriate Order follows.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: January 24, 2013